1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   Code Rebel, LLC,                )   CV 13-4539 RSWL (MANx)
                                      )
12                                    )
                          Plaintiff,  )   **ORDER RE: DEFENDANT AQUA**
13                                    )   **CONNECT, INC.'S MOTION**
                                      )   **TO DISMISS, TO STRIKE,**
14             v.                     )   **AND FOR A MORE DEFINITE**
                                      )   **STATEMENT** [9]
15                                    )
     Aqua Connect, Inc.              )
16                                    )
                                      )
17                                    )
                                      )
18                         Defendant. )
                                      )
19   _____)

20        Currently before the Court is Defendant Aqua

21   Connect, Inc.'s ("Defendant") Motion to Dismiss and to

22   Strike Plaintiff Code Rebel, LLC's ("Plaintiff")

23   Complaint and Defendant's Motion for More Definite

24   Statement [9].  The Court, having reviewed all papers

25   submitted pertaining to these Motions, **NOW FINDS AND**

26   **RULES AS FOLLOWS:**

27        The Court **GRANTS in part** and **DENIES in part**

28   Defendant's Motion to Dismiss, **GRANTS in part** and

                                1

1  **DENIES in part** Defendant's Motion to Strike, and **DENIES**
2  Defendant's Motion for a More Definite Statement.

3  ### I.   BACKGROUND

4       Plaintiff is a Hawaiian company that has developed
5  multiple types of remote access software, known by the
6  names iRAPP and iRAPP TS (collectively, the "iRAPP
7  programs"), that allow one or more users to view and
8  fully interact with a remote or locally networked Apple
9  Macintosh computer.  Compl. ¶ 6.  Defendant is a Nevada
10 corporation and is a direct competitor of Plaintiff, in
11 that Defendant also markets and sells a computer
12 program designed to allow users to remotely access and
13 interact with an Apple Macintosh computer and/or
14 server.  Id. at ¶ 9.  Defendant's program is called
15 Aqua Connect Terminal Server, commonly known as "ACTS."
16 Id.

17      Plaintiff has marketed and sold its iRAPP programs
18 to the public since approximately September of 2007.
19 It alleges that Defendant became aware of the existence
20 of Plaintiff's iRAPP programs no later than April of
21 2008.  Id. at ¶¶ 7,8.  Plaintiff alleges that once
22 Defendant became aware that it was a direct competitor
23 of Plaintiff, Defendant embarked on a pattern of
24 defamation and disparagement of both Plaintiff's
25 programs and Plaintiff itself, with the intent to
26 interfere with Plaintiff's economic interests and
27 destroy competition.  Id. at ¶ 10.  Specifically,
28 Plaintiff alleges that Defendant knowingly and/or with

1  a reckless disregard for the truth made false
2  representations of fact to third parties, including
3  Plaintiff's customers and potential customers,
4  regarding Plaintiff and/or the iRAPP programs.  Such
5  false representations include (1) asserting that
6  Plaintiff's iRAPP programs infringe on Defendant's
7  patents (when Defendant holds no patents) and (2)
8  asserting that the controversial "Cherry OS" product
9  was Plaintiff's product.  Plaintiff also alleges that
10 Defendant offered for sale and sold Defendant's ACTS
11 program at prices below Defendant's cost in violation
12 of the Clayton Antitrust Act.  Id. at ¶ 11.

13     On June 21, 2013, Plaintiff filed the instant
14 Action against Defendant [1] alleging that Defendant
15 engaged in trade libel, intentional interference with
16 prospective economic advantage, negligent interference
17 with prospective economic advantage, violation of the
18 Clayton Antitrust Act, and unfair business practices.
19 Id. at ¶ 13.  Plaintiff seeks damages for lost sales,
20 injuries to Plaintiff's reputation, and injuries to the
21 iRAPP brand.  Id.  On August 12, 2013, Defendant filed
22 this Motion to Dismiss, to Strike and for a More
23 Definite Statement [9].

24            **II.  LEGAL STANDARD**
25 **A.  Motion to Dismiss**
26     Federal Rule of Civil Procedure 12(b)(6) allows a
27 party to move for dismissal of one or more claims if
28 the pleading fails to state a claim upon which relief

3

can be granted.  Dismissal can be based on a lack of cognizable legal theory or lack of sufficient facts alleged under a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  However, a party is not required to state the legal basis for its claim, only the facts underlying it.  <u>McCalden v. Cal. Library Ass'n</u>, 955 F.2d 1214, 1223 (9th Cir. 1990), <u>cert. denied</u>, 112 S. Ct. 2306 (1992).  In a Rule 12(b)(6) motion to dismiss, a court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party.  <u>Klarfeld v. United States</u>, 944 F.2d 583, 585 (9th Cir. 1991).

The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of its claim.  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 583 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  <u>Id.</u> at 555 (internal citation omitted).  Although specific facts are not necessary if the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

If dismissed, a court must then decide whether to grant leave to amend.  The Ninth Circuit has repeatedly held that a district court should grant leave to amend even if no request to amend the pleadings was made, unless the court determines that the pleading could not possibly be cured by the allegation of other facts. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). The court has discretion to deny leave to amend where deficiencies cannot be cured.  Keniston v. Roberts, 717 F.2d 1295, 1300 (9th Cir. 1983).

**B.   Motion to Strike**

Federal Rule of Civil Procedure 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). "Immaterial" matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). "Impertinent" matter consists of statements that do not pertain, and are not necessary, to the issues in question."  Id.

The purpose of Rule 12(f) is "to avoid the expenditure of time and money that must arise from

litigating spurious issues by disposing of those issues prior to trial." Sidney-Vinstein v. A.H. Robbins Co., 697 F.2d 880, 885 (9th Cir. 1983). However, motions to strike are regarded with disfavor; the challenged pleading therefore must be viewed in the light most favorable to the pleader. See Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). See also Pepsico, Inc. v. J.K. Distributors, Inc., No. 8:07CV00657, 2007 WL 2852647, at *2 (C.D. Cal. Sept. 14, 2007) Further, such motions are generally denied unless the allegations have no possible relation to the subject matter of the litigation. See Colaprico, 758 F. Supp. at 1339.

C. **Motion for a More Definite Statement**

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. Fed. R. Civ. P. 12(e). Rule 12(e) motions are disfavored and rarely granted. Cellars v. Pac. Coast Packaging, Inc., 189 F.R.D. 575, 578 (N.D. Cal. 1998). A motion for more definite statement fails where the complaint is specific enough to apprise the moving party of the substance of the claim being asserted. See Bureerong v. Uvawas, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996). Where the information sought by the moving party is available, the motion should be denied. Famolare, Inc.

1  v. Edison Bros. Stores, Inc., 525 F. Supp. 940, 949
2  (E.D. Cal. 1981).
3                    **III.  ANALYSIS**
4  **A.  Defendant's Request for Judicial Notice**
5       As a preliminary matter, Defendant has filed a
6  request for this Court to take judicial notice of
7  Defendant's pending patent applications.  This Court,
8  however, finds that such documents are not necessary
9  for the Court's analysis.  As such, the Court **DENIES**
10 Defendant's request **as Moot.**
11 **B.  Defendant's Motion to Dismiss**
12      1.  Plaintiff's Trade Libel and Disparagement Claim
13      Defendant argues that Plaintiff's trade libel claim
14 regarding Defendant's alleged statements about patent
15 infringement is preempted by patent law.  Although it
16 is true that § 154(d) allows a patentee to make its
17 rights known to a potential infringer so that the
18 infringer can determine whether to cease its infringing
19 activity, the patentee must act in good-faith.
20 "[F]ederal patent law preempts state law that punishes
21 merely publicizing a patent in the marketplace[,]
22 unless the plaintiff can show that the patentholder
23 acted in bad faith."  Sandisk Corp v. LSI Corp, No. C
24 09-02737, 2009 WL 3047375, at *2 (N.D. Cal. Sept. 18,
25 2009); Globetrotter Software, Inc. v. Elan Computer
26 Group, Inc., 362 F.3d 1367, 1377 n.9 (Fed. Cir. 2004).
27 If the patentee knows that the patent is invalid,
28 unenforceable, or not infringed, yet represents to the

                              7

marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out. Sandisk, 2009 WL 3047375 at *2; Zenith Elecs. Corp. v. EXZEC, 182 F.3d 1340, 1354 (Fed. Cir. 1999); see also Bylin Heating Systems, Inc v. M & M Gutters, LLC, No. 2:07-CV-00505-FCD-KJM, 2008 WL 744706, at *2 (E.D. Cal. March 18, 2008).  A plaintiff asserting that the defendant patent holder acted in bad faith must establish that the claims of infringement were objectively baseless.  Sandisk, 2009 WL 3047375 at *2. Here, Plaintiff has alleged sufficient facts that Defendant acted in bad faith when it engaged in false and misleading statements that Plaintiff was infringing on non-existent patents.  Moreover, Plaintiff's allegations establish that Defendant's statement of infringement was objectively baseless because Plaintiff indicates in its Complaint that Defendant holds no patents.  Compl. ¶ 5.  Presuming such allegations to be true, the Court finds that Plaintiff's trade libel claims as to patent allegations are not preempted by federal law.

Even though Plaintiff's trade libel claims as to patent allegations are not preempted by federal law, Plaintiff fails to plead its trade libel claim with requisite particularity.  In California, a disparaging statement about a competitor's product that causes the competitor to suffer pecuniary damages is actionable as trade libel.  See Microtec Research, Inc. v. Nationwide

Mut. Ins. Co., 40 F.3d 968, 972–73 (9th Cir. 1994).  To
state a claim for trade libel, a plaintiff must allege
facts demonstrating a "(1) publication, (2) which
induces others not to deal with plaintiff, and (3)
special damages."  Aetna Cas. and Sur. Co., Inc. v.
Centennial Ins. Co., 838 F.2d 346, 351 (9th Cir. 1988).
Trade libel is not, however, a true libel and is not
actionable as defamation.  Id. (citing Polygram
Records, Inc. v. Superior Court, 170 Cal. App. 3d 543,
548–49 (1985)); First Advantage Background Services
Corp. v. Private Eyes, 569 F. Supp. 2d 929, 937 (N.D.
Cal. 2008); Films of Distinction, Inc. v. Allegro Film
Prods., Inc., 12 F. Supp. 2d 1068, 1081 (C.D. Cal.
1998).

     Although trade libel is not actionable as
defamation, this difference does not diminish the
pleading requirements in a trade libel claim, which
requires that the claim be based on specific
statements.  Private Eyes, 569 F. Supp 2d at 937; See,
e.g., Eldorado Stone v. Renaissance Stone, Inc., No.
04-cv-2562 JM, 2005 WL 5517731, at *3 (S.D. Cal. Aug.
9, 2005) (dismissing trade libel claim where plaintiff
failed to identify the author or speaker, recipient,
time, and location of each allegedly libelous
statement); Films of Distinction, 12 F. Supp. 2d at
1081 n.8 ("In the Ninth Circuit, a product defamation
or trade libel claim must be based on specific
statements, and the defamatory character of the

9

language must be apparent from the words themselves."). At a minimum, necessary defamation allegations must identify the time and place of publication as well as the speaker, the recipient of the statement, the substance of the statements, and, in the case of trade libel, special damages. <u>Eldorado</u>, 2005 WL 5517731 at *10-11; <u>see also</u> <u>Private Eyes</u>, 569 F. Supp. 2d at 937. For example, in <u>Private Eyes</u>, the court dismissed a claim for trade libel, holding that the plaintiff gave no indication of who made the allegedly libelous statements, to whom they made those statements, when they made the statements, or what exactly they said. 569 F. Supp. 2d at 937.

Here, the Court finds that Plaintiff has failed to plead its trade libel claim with requisite particularity. Although Plaintiff indicates in its Complaint that the alleged defamatory statements were made within the last two years by Defendant's officers, employees, and/or agents, to actual and prospective customers, (Compl. ¶¶ 15,16), Plaintiff fails to identify the specific time and location of each alleged statement. <u>Private Eyes</u>, 569 F. Supp. 2d at 937, (citing <u>Eldorado</u>, 2005 WL 5517731 at *3). This alone is a sufficient basis to grant Defendant's Motion to Dismiss Plaintiff's trade libel claim.

Moreover, Plaintiff has also failed to allege facts demonstrating special damages. In <u>New.Net, Inc. v. Lavasoft</u>, the court held that a plaintiff could not

satisfy the special damages requirement for trade libel by simply referring to an amount to be ascertained at trial rather than specifying the amount of damage.   356 F. Supp. 2d 1090, 1113 (C.D. Cal. 1990).   The court in New.Net noted that "a bare allegation of the amount of pecuniary loss is insufficient for the pleading of a trade libel claim."   Id.; See also Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998).   In Private Eyes, the court noted that the plaintiff merely alleged that the libelous statements "harmed PEI's business relationship with [a third party]."   569 F. Supp. 2d at 937. However, the court noted that the plaintiff did not allege the amount of business it had from the third party prior to the defendant allegedly making these statements, how much it had after, or the value of the business.   Id.   The court thereby held that the plaintiff had not adequately pled special damages.

Here, Plaintiff provides only a bare allegation that it has or will sustain damages in excess of $100,000.00, but acknowledges that the exact amount will be proven at trial.   Compl. ¶ 19.   Moreover, Plaintiff does not allege the amount of business it had prior to Defendant allegedly making these statements, how much it had after those statements were made, or the value of the business.   See Private Eyes, 569 F. Supp. 2d at 937.   Accordingly, the Court finds that Plaintiff has failed to satisfy the special damages

1    requirement for a trade libel claim.

2         Accordingly, because Plaintiff has failed to plead

3    its trade libel claim with requisite particularity, the

4    Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's

5    claim for trade libel with leave to amend.

6         2.   <u>Plaintiff's Intentional Interference with</u>

7              <u>Prospective Economic Advantage and Negligent</u>

8              <u>Interference with Economic Advantage Claims</u>

9         As a preliminary matter, Defendant argues that

10   Plaintiff's claims for intentional interference with

11   prospective economic advantage and negligent

12   interference with prospective economic advantage must

13   be dismissed since they allege fraud without meeting

14   the heightened pleading standard of Rule 9(b); however,

15   both claims need not be dismissed on this ground.   In

16   cases where fraud is not a necessary element of a

17   claim, a plaintiff may nonetheless choose to allege in

18   the complaint that the defendant has engaged in

19   fraudulent conduct.   <u>Vess v. Ciba-Geigy Corp. USA</u>, 317

20   F.3d 1097, 1103 (9th Cir. 2003).   In cases where a

21   plaintiff chooses to allege some fraudulent and some

22   non-fraudulent conduct, only the allegations of fraud

23   are subject to Rule 9(b)'s heightened pleading

24   requirements.   <u>Id.</u> at 1104.   The text of Rule 9(b)

25   requires only that in "all averments of fraud . . . . ,

26   the circumstances constituting fraud . . . shall be

27   stated with particularity."   <u>Id.</u> (citing Fed. R. Civ.

28   P. 9(b)).   The rule does not require that allegations

supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct.  <u>Id.</u> at 1105.  Thus, if particular averments of fraud are insufficiently pled under Rule 9(b), a district court should "disregard" those averments, or "strip" them from the claim.  <u>Id.</u>  The court should then examine the allegations that remain to determine whether they state a claim.  <u>Id.</u>  Here, Plaintiff does not allege a claim for fraud, but only alleges "fraud" to the extent that "fraud" is part of allegations that Defendant committed the acts alleged with "malice, oppression, or fraud" and with intent to injure Plaintiff.  Opp'n 5:13-16. Moreover, Plaintiff's allegation of fraud is not a necessary element of Plaintiff's claims of trade libel, intentional interference with economic advantage, and negligent interference with economic advantage. Accordingly, the Court hereby disregards those fraud averments, and examines the allegations that remain to determine whether they state a claim.

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege

> (1) an economic relationship between plaintiff and a third party, with probable future economic benefit to plaintiff; (2) defendant's knowledge of the relationship; (3) intentional acts by defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to plaintiff proximately

1  caused by acts of defendant.

2  Metal Lite, Inc. v. Brady Const. Innovations, Inc., 558

3  F. Supp. 2d 1084, 1094 (C.D. Cal. 2007).

4      Here, the Court finds that Plaintiff has

5  sufficiently pled the necessary facts to support the

6  elements of this claim.  As to the first element,

7  Plaintiff alleges that an economic and business

8  relationship existed between Plaintiff and its actual

9  and prospective customers of the iRAPP programs.

10  Compl. ¶ 22.  Although Plaintiff does not specifically

11  identify existing third parties with whom there was an

12  existing economic or business relationship, Plaintiff's

13  allegation of interference with "actual and potential

14  customers" is sufficient to satisfy federal pleading

15  requirements.  See Aagard v. Palomar Builders, Inc.,

16  344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004).  Second,

17  Plaintiff maintains that as a direct competitor of

18  Plaintiff, Defendant knew, or should have known of said

19  economic relationships.  Third, Plaintiff alleges facts

20  that Defendant engaged in intentional acts to disrupt

21  those relationships by embarking on a pattern of

22  defamation and disparagement of the iRAPP programs and

23  Plaintiff itself.  Compl. ¶¶ 10, 24.  Fourth, Plaintiff

24  alleges that due to Defendant's intentional acts, its

25  relationships with actual and potential customers were

26  disrupted.  The court can draw the inference, although

27  not specifically pleaded, that as a direct competitor

28  of Plaintiff, Defendant's statements adversely affected

14

the potential customers' willingness to purchase
Plaintiff's products.  Finally, Plaintiff alleges that
it sustained damages in an amount in excess of $100,000
as a result of Defendant's statements being a
substantial factor in causing harm to Plaintiff's
business.  Id. at ¶¶ 23, 26.  Accordingly, because
Plaintiff has pled sufficient facts for a claim of
intentional interference with prospective economic
advantage, the Court **DENIES** Defendant's Motion to
Dismiss this claim.

To state a claim for negligent interference with
prospective economic advantage, Plaintiff must
demonstrate that:

(1) an economic relationship existed between
the plaintiff and a third party which contained
a reasonably probable future economic benefit
or advantage to plaintiff;

(2) the defendant knew of the existence of the
relationship and was aware or should have been
aware that if it did not act with due care its
actions would interfere with this relationship
and cause plaintiff to lose in whole or in part
the probable future economic benefit or
advantage of the relationship;

(3) the defendant was negligent; and

(4) such negligence caused damage to plaintiff
in that the relationship was actually
interfered with or disrupted and plaintiff lost

15

1    in whole or in part the economic benefits or

2    advantage reasonably expected from the

3    relationship.

4    <u>Unical Enters., Inc. v. Am. Ins. Co.</u>, No. CV 05-3511

5    CBM (PJWx), 2005 WL 6133691, at *5 (C.D. Cal. Dec. 14,

6    2005) (quoting <u>N. Am. Chem. Co. v. Sup. Ct.</u>, 59 Cal.

7    App. 4th 764, 786 (1997)).

8        Here, as discussed above, Plaintiff has provided

9    sufficient facts to support that economic and business

10    relationships existed between Plaintiff and its actual

11    and prospective customers.  Further, as Plaintiff's

12    direct competitor, Plaintiff has alleged sufficient

13    facts to show that Defendant knew, or should have

14    known, that if it did not act with due care, its

15    actions would interfere with those relationships.

16    Compl. ¶¶ 33, 34.  Plaintiff further alleges that

17    Defendant failed to exercise reasonable care.  <u>Id.</u> at

18    ¶¶ 35, 37-39.  Although not specifically pleaded, the

19    Court can infer from the facts in the Complaint that

20    Defendant acted with a reckless disregard for the truth

21    if it asserted that Plaintiff's iRAPP programs

22    infringed on Defendant's existing patents to potential

23    customers without knowing whether or not such a

24    statement was in fact true.  Moreover, although not

25    specifically pleaded, the Court can infer that as a

26    direct competitor, Defendant's statements caused

27    economic damage to the extent that potential customers

28    were less willing to purchase products from Plaintiff

after hearing Defendant's statements.   Accordingly,
because Plaintiff has pled sufficient facts for a claim
of negligent interference with prospective economic
advantage, the Court **DENIES** Defendant's Motion to
Dismiss this claim.

    3.   <u>Plaintiff's Federal Antitrust Claim</u>

    Defendant argues that Plaintiff's Antitrust claims
cannot apply to Defendant because software is not a
commodity.   Section 2(a) of the Clayton Antitrust Act
(as amended by the Robinson-Patman Act) prohibits any
person engaged in commerce to ". . .discriminate in
price between different purchasers of commodities . .
."   15 U.S.C. § 13.   The Robinson-Patman Act's
prohibition on price discrimination thus extends only
to transactions involving commodities.   <u>See</u> <u>May Dep't</u>
<u>Store v. Graphic Process Co.</u>, 637 F.2d 1211, 1214 (9th
Cir. 1980); <u>see</u> <u>also</u> <u>Baun v. Investors Diversified</u>
<u>Services, Inc.</u>, 409 F.2d 872, 873 (7th Cir. 1969).   A
sale of commodities is a "sale of 'goods, wares, or
merchandise' and is not merely a contract for
services."   <u>May</u>, 637 F.2d at 1214 (quoting <u>Rangen, Inc.</u>
<u>v. Sterling Nelson & Sons, Inc.</u>, 351 F.2d 851 (9th Cir.
1965)).   The Ninth Circuit stated in <u>May</u> that there
were "no congressional discussions on the distinction
between goods and services," and that "[l]egislative
history reveals only that Congress intended the Act to
apply to *tangible* goods and not services."   <u>May</u>, 637
F.2d at 1214 (emphasis added); <u>Windsor Auctions, Inc.</u>

1    v. eBay, Inc., No. C-07-06454, 2008 WL 2622791, at *3;
2    Innomed Labs., LLC v. Alza Corp., 368 F.3d 148, 155 (2d
3    Cir. 2004); See also Tele Atlas N.V. v. Navteq Corp.,
4    397 F. Supp. 2d 1184, 1192-93 (N.D. Cal. 2005) (holding
5    that the word, "commodity," means a "tangible good,"
6    such as products or merchandise).

7         When a transaction involves both goods and
8    services, the May court adopted the "dominant nature"
9    test to determine how to characterize the transaction
10   for the purposes of the Robinson-Patman Act. Windsor,
11   2008 WL 2622791 at *4; Standfacts Credit Services,
12   Inc., v. Experian Information Solutions, Inc., 405 F.
13   Supp. 2d 1141, 1156 (C.D. Cal. 2005) (quoting May, 637
14   F.2d at 1215). However, courts only apply the dominant
15   nature test where "the subject of the contract is a
16   combination of goods and intangible rights and
17   services." Windsor, 2008 WL 2622791 at *4; Innomed
18   Labs., 368 F.3d at 156.

19        Although there is no clear judicial consensus
20   regarding whether software is a "commodity," for
21   purposes of the Robinson-Patman Act, courts have
22   strictly construed the term "commodity" and held that
23   "it denotes only *tangible* products of trade." Windsor,
24   2008 WL 2622791 at *3 (emphasis added). Furthermore,
25   Windsor recognized that software lacks the requirement
26   of a "tangible component." Id. at *4. On this basis,
27   the Court can infer that software is not a commodity
28   and is not subject to the Robinson-Patman Act.

Moreover, Plaintiff's Complaint indicates that the Parties develop multiple types of remote access software; however, Plaintiff provides no evidence or allegations suggesting that Defendant's ACTS program is anything but an *intangible* product.  In <u>Tele Atlas</u>, in which the court dismissed plaintiff's antitrust claim, the court noted that the plaintiff did not allege that the defendant had sold a physical item and thus there was no reason to apply the dominant nature test to determine how to characterize the transaction for the purposes of the Robinson-Patman Act.  397 F. Supp. 2d at 1192-93.  Similarly here, Plaintiff does not allege that Defendant has sold a physical product.  Rather, Plaintiff only alleges that Defendant sells a computer program, but it is unclear whether or not such a program includes physical items.  <u>Id.</u>  If such a program includes physical items, the Court may apply the "dominant nature" test to characterize the transaction for the purposes of the Robinson-Patman Act.  However, because it is unclear whether the program is a combination of goods and intangible rights and services, the Court cannot engage in such an analysis.  <u>See</u> <u>Windsor</u>, 2008 WL 2622791 at *4.  Because Plaintiff fails to provide sufficient facts to support that Defendant's software includes physical items or is a tangible product, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Clayton Antitrust claim with leave to amend.

4.   <u>Plaintiff's Claim of Unfair Business Practices</u>
     <u>in Violation of California Business &</u>
     <u>Professions Code § 17043</u>

Defendant argues that Defendant is not a "vendor" within the meaning of Cal. Bus. & Prof. Code § 17025 and is therefore not liable under § 17043. A vendor is defined as a "seller," and Plaintiff has alleged that Defendant is the seller of a computer program. BLACK'S LAW DICTIONARY 1590 (9th ed. 2004). As such, Defendant is a vendor within meaning of § 17025. However, Plaintiff nonetheless fails to satisfy the pleading requirements of § 17043.

To satisfy the pleading requirements of § 17043, a plaintiff must allege the defendant's sales price, its cost in the product and its cost of doing business. <u>Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.</u>, 12-CV-05847-JST, 2013 WL 3242245, at *15 (N.D. Cal. June 25, 2013), (citing <u>G.H.I.I. v. MTS, Inc.</u>, 147 Cal. App. 3d 256, 275 (1983)). Here, Plaintiff provides a bare allegation that Defendant sold its ACTS program at a price below cost, for the purpose of injuring its competitors, in violation of § 17043. However, Plaintiff has completely failed to allege Defendant's sales price, its cost in the product, and its cost of doing business. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's § 17043 claim with leave to amend.

5.    <u>Plaintiff's Claim of Unfair Business Practices</u>
      <u>in Violation of California Business &</u>
      <u>Professions Code § 17000</u>

California Business & Professions Code § 17000 prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]" and "unfair, deceptive, untrue or misleading advertising." <u>Rolling v. E*Trade Sec., LLC</u>, 756 F. Supp. 2d 1179, 1192 (N.D. Cal. 2010) (citing Cal. Bus. & Prof. Code § 17200).  To state a claim under § 17000, a plaintiff must plead that (1) the defendant engaged in one of the practices prohibited by the statute, and (2) the plaintiff suffered actual injury in fact as a result of defendant's actions.  <u>Id.</u>  Section 17000 provides a cause of action for any activity "that can properly be called a business practice and that at the same time is forbidden by law." <u>Microsoft Corp v. A-Tech Corp.</u>, 855 F. Supp. 308, 313 (C.D. Cal. 1994) (citing <u>Farmers Ins. Exch. v. Superior Ct.</u>, 2 Cal.4th 377, 383 (1992)).  In essence, "an action based on § 17000 to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to a business activity, as unlawful practices independently actionable under § 17000." <u>Id.</u>

When a plaintiff who claims to have suffered injury from a direct competitor's unfair act or practice invokes § 17000, a plaintiff must plead conduct that threatens an incipient violation of an antitrust law or

violates the policy or spirit of one of those laws
because its effects are comparable to or are the same
as a violation of the law, or otherwise significantly
threatens or harms competition.  Cel-Tech Commc'ns,
Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163,
187 (1999).  Here, Plaintiff alleges in its Complaint
that Defendant engaged in both intentional and
negligent interference with economic advantage, which
have negatively affected Plaintiff's business
reputation and goodwill.  Moreover, Plaintiff has
alleged that Defendant engaged in such actions with the
intent to destroy competition.  Compl. ¶ 3.  Presuming
such allegations to be true, the Court finds that
Plaintiff has sufficiently pled a claim for unfair
business practices and **DENIES** Defendant's Motion to
Dismiss Plaintiff's § 17000 claim.

**C.   Defendant's Motion to Strike**

Defendant seeks to strike Plaintiff's fraud
allegations to the extent that they lack the
specificity required by Rule 9(b) and are not capable
of amendment.  Defendant presumably seeks to strike the
portions in the Complaint which allege that Defendant's
"acts of defamation were committed with malice,
oppression or *fraud* . . . " (Compl. ¶¶ 20, 29, 40)
(emphasis added), to the extent that those allegations
allege fraud.  In Operating Engr's Pension Trust Fund
v. Fife Rock Prod. Co, defendants filed an affirmative
defense which alleged that plaintiff's claims were

22

barred by the doctrines of waiver, laches, estoppel, *fraud*, judicial estoppel, prior breach, and legal excuse.  No. C 10-00697 SI, 2010 WL 2635782, at *4 (N.D. Cal. June 30, 2010) (emphasis added).  The court in <u>Operating Engr's Pension</u> granted the plaintiff's motion to strike the affirmative defense of fraud given that the defendants failed to "state with particularity the circumstances constituting fraud." <u>Id.</u> (citing Fed. R. Civ. P. 9(b)).  Similarly here, the Complaint alleges that Defendant's acts of defamation were "committed with malice, oppression or *fraud*" without stating with particularity the circumstances constituting fraud.  Accordingly, the Court **GRANTS** Defendant's Motion to Strike Plaintiff's fraud allegations with leave to amend.

Defendant also moves to strike those allegations regarding patents, arguing that they are preempted by federal law.  However, as discussed above, such allegations are not preempted by federal law.  Accordingly, the Court **DENIES** Defendant's Motion to Strike Plaintiff's allegations regarding patents.

**D.  <u>Defendant's Motion for a More Definite Statement</u>**

Defendant seeks a more definite statement regarding Plaintiff's claims of trade libel, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage.  However, because the Court grants Defendant's Motion to Dismiss Plaintiff's claim for

trade libel, the Court **DENIES as moot** Defendant's
Motion for a More Definite Statement for Plaintiff's
trade libel claim.  As to Plaintiff's tortious
interference claims, Plaintiff alleges that Defendant
made false and misleading statements about Plaintiff's
iRAPP programs, i.e., that Plaintiff's iRAPP programs
infringe on Defendant's patents (when Defendant holds
no patents) and that the controversial "Cherry OS"
product was Plaintiff's product, which interfered with
Plaintiff's relationships with existing and potential
customers.  Accordingly, the Court finds that the
Complaint is specific enough to apprise Defendant of
the substance of the claim being asserted and **DENIES**
Defendant's Motion for a More Definite Statement of
Plaintiff's tortious interference claims.

### IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS in part
and DENIES in part** Defendant's Motion to Dismiss,
**GRANTS in part and DENIES in part** Defendant's Motion to
Strike, and **DENIES** Defendant's Motion for a More
Definite Statement as follows:

- The Court **GRANTS** Defendant's Motion to Dismiss
  Plaintiff's Trade Libel claim and gives
  Plaintiff twenty days to amend.
- The Court **DENIES** Defendant's Motion to Dismiss
  Plaintiff's claim for Intentional Interference
  with Prospective Economic Advantage.
- The Court **DENIES** Defendant's Motion to Dismiss

Plaintiff's claim for Negligent Interference with Prospective Economic Advantage.

- The Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's claim for violation of the Clayton Antitrust Act and gives Plaintiff twenty days to amend.
- The Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's claim for violation of Unfair Business Practices [Cal. Bus. & Prof. Code § 17043] and gives Plaintiff twenty days to amend.
- The Court **DENIES** Defendant's Motion to Dismiss Plaintiff's claim for violation of Unfair Business Practices [Cal. Bus. & Prof. Code §§ 17200 et seq.].
- The Court **GRANTS** Defendant's Motion to Strike Plaintiff's fraud allegations and gives Plaintiff twenty days to amend and **DENIES** Defendant's Motion to Strike Plaintiff's allegations regarding patents.
- The Court **DENIES** Defendant's Motion for a More Definite Statement.

///
///
///
///
///
///

Additionally, the Court **DENIES as moot** Defendant's Request for Judicial Notice.

**IT IS SO ORDERED.**

DATED: September 24, 2013

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge