UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Code Rebel, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>Aqua Connect, Inc.<br><br>                    Defendant. | CV 13-4539 RSWL (MANx)<br><br>**ORDER RE: DEFENDANT AQUA CONNECT, INC.'S MOTION TO FOR COST BOND** [70] |

Currently before the Court is Defendant Aqua Connect, Inc.'s ("Defendant") Motion for Cost Bond [70].  The Court, having reviewed all papers submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS**: The Court **GRANTS** Defendant's Motion.

### I.  BACKGROUND

**A.  Factual Background**

Plaintiff Code Rebel, LLC ("Plaintiff") is a Hawaiian company that has developed multiple types of

1

remote access software, known by the names iRAPP and iRAPP TS (collectively, the "iRAPP programs"), that allow one or more users to view and fully interact with a remote or locally networked Apple Macintosh computer. First Am. Compl. ¶ 6. Defendant is a Nevada corporation and is a direct competitor of Plaintiff, in that Defendant also markets and sells a computer program designed to allow users to remotely access and interact with an Apple Macintosh computer and/or server. Id. at ¶ 9. Defendant's program is called Aqua Connect Terminal Server, commonly known as "ACTS." Id.

Plaintiff has marketed and sold its iRAPP programs to the public since approximately September 2007. It alleges that Defendant became aware of the existence of Plaintiff's iRAPP programs no later than April 2008. Id. at ¶¶ 7, 8. Plaintiff alleges that once Defendant became aware that it was a direct competitor of Plaintiff, Defendant embarked on a pattern of defamation and disparagement of both Plaintiff's programs and Plaintiff itself, with the intent to interfere with Plaintiff's economic interests and to destroy competition. Id. at ¶ 10. Specifically, Plaintiff alleges that Defendant knowingly and/or with a reckless disregard for the truth made false representations of fact to third parties, including Plaintiff's customers and potential customers, regarding Plaintiff and/or the iRAPP programs. Such

false representations include (1) asserting that Plaintiff's iRAPP programs infringe on Defendant's patents (when Defendant holds no patents) and (2) asserting that the controversial "Cherry OS" product was Plaintiff's product.

**B.  Procedural Background**

This Action was originally filed as a counterclaim in related case, <u>Aqua Connect Inc. v. Code Rebel LLC</u> (11-cv-05764-RSWL-MAN) ("the First Action") [113].  In the First Action, Aqua Connect's claims include Code Rebel's alleged reverse engineering of ACTS.  Although Code Rebel attempted to file counterclaims relating to Aqua Connect's alleged libelous representations to third parties and its sale of the ACTS program at prices below cost in the First Action, the Court in the First Action denied Code Rebel's Motion for Leave to File Counterclaims, given that adding the counterclaims late in the litigation would be unduly prejudicial to Aqua Connect.  <u>See</u> Case No. 11-05764 [113].

On June 21, 2013, Plaintiff filed the instant Action against Defendant alleging that Defendant engaged in trade libel, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, violation of the Clayton Antitrust Act, and unfair business practices. Compl. ¶ 13.

On August 12, 2013, Defendant filed a Motion to Dismiss, to Strike and for a More Definite Statement

[9]. The Court issued an Order on September 24, 2013 (1) granting Defendant's Motion to Dismiss Plaintiff's trade libel claim, claim for violation of the Clayton Antitrust Act, and claim for violation of Unfair Business Practices under Cal. Bus. & Prof. Code § 17043 (providing Plaintiff twenty days leave to amend) and (2) denying Defendant's Motion to Dismiss Plaintiff's claims for intentional and negligent interference with prospective economic advantage and violation of Unfair Business Practices under Cal. Bus. & Prof. Code § 17200 et seq. [14]. Further, the Court granted Defendant's Motion to Strike Plaintiff's fraud allegations (providing Plaintiff twenty days leave to amend) and denied Defendant's Motion to Strike Plaintiff's allegations regarding patents [14].

On October 15, 2013, Plaintiff electronically filed its FAC [15]. On November 4, 2013, Defendant filed a second Motion to Dismiss and to Strike Portions of Plaintiff's Complaint [22]. On November 19, 2013, Defendant filed a third Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for Lack of Subject Matter Jurisdiction [25]. On January 3, 2014, the Court granted Defendant's Motion to Dismiss Plaintiff's Clayton Antitrust and § 17043 claims without leave to amend, denied Defendant's Motion to Strike, and denied Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [32].

On February 4, 2014, Defendant filed a Motion for

Summary Judgment, which the Court denied as premature because Defendant filed and served its Motion before Plaintiff had a meaningful opportunity to conduct discovery [57].

On April 29, 2014, Defendant filed the instant Motion for Cost Bond [70].  Plaintiff filed its Opposition on May 7, 2014 [71], and Defendant filed its Reply on May 14, 2014 [72].  This matter was set for hearing on May 28, 2014 and was taken under submission on May 23, 2014 [73].

## II.   LEGAL STANDARD

### A. Motion for Cost Bond Pursuant to Cal. Civ. Proc. Code § 1030

There is no specific provision in the Federal Rules of Civil Procedure relating to security for costs. Simulnet East Assocs. v. Ramada Hotel Operating Co., 37 F.3d 573, 574 (9th Cir. 1994).  However, federal district courts have inherent power to require plaintiffs to post security for costs. Id. (citing In re Merrill Lynch Relocation Mgmt., Inc., 812 F.2d 1116, 1121 (9th Cir. 1987)).  "Typically, federal courts . . . follow the forum state's practice with regard to security for costs . . . this is especially common when a non-resident party is involved." Id. (citing 10 Charles Alan Wright, et al., Federal Practice and Procedure: § 2671 (3d. ed. 2014)).

Here, the forum state's statute regarding imposition of a cost bond is Cal. Civ. Proc. Code §

1030.  See <u>Gabriel Techs. Corp. v. Qualcomm Inc.</u>, No. 08 CV 1992 MMA (POR), 2010 WL 3718848, at *2 (S.D. Cal. Sept. 10, 2010).  Cal. Civ. Proc. Code § 1030 provides:

> [w]hen the plaintiff in an action or special proceeding resides out of the state, or is a foreign corporation, the defendant may at any time apply to the court by noticed motion for an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees which may be awarded in the action or special proceeding.

<u>Alshafie v. Lallande</u>, 171 Cal. App. 4th 421, 428 (2009).

Thus, under Cal. Civ. Proc. Code § 1030, a defendant may move the court to issue a cost bond against a plaintiff who resides outside of California, or is a foreign corporation.  <u>Id.</u>  The defendant must also demonstrate that there is "a reasonable possibility . . . [it] will obtain judgment in the action . . . ."  <u>Id.</u> (citing Cal. Civ. Proc. Code § 1030).  California state courts describe the purpose of Cal. Civ. Proc. Code § 1030 as a way to assist California defendants to "secure costs in light of the difficulty of enforcing a judgment for costs against a person who is not within the court's jurisdiction."  <u>Id.</u>  The statute therefore acts to prevent out-of-state residents from filing frivolous lawsuits against California residents.  <u>Id.</u> (citing <u>Yao v. Superior</u>

Court, 104 Cal. App. 4th 327, 331 (2002)).

In requiring a security bond for a defendant's costs, care must be taken not to deprive a plaintiff of access to the federal courts. Simulnet, 37 F.3d at 575-76. Thus, in considering whether to require a security bond for a defendant's costs, courts must strike a delicate balance. Id. at 576. Some factors to balance include:

> (i) the degree of probability/improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; and (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective.

Id. (citing Aggarwal v. Ponce Sch. of Med., 745 F.2d 723, 727–28 (1st Cir. 1984))

To satisfy the requirements of Cal. Civ. Proc. Code § 1030, a defendant must produce sufficient evidence to demonstrate he has a "reasonable possibility" of defeating each of plaintiff's claims, but no more. Gabriel Techs., 2010 WL 3718848, at *5 (citing Cal. Civ. Proc. Code § 1030(b)). This burden requires a defendant to do more than simply raise possible defenses. Id. A defendant is not required to show that there is no possibility that a plaintiff could win at trial, but only that it is *reasonably possible* that

7

the defendant would win.  <u>Baltayan v. Estate of Getemyan</u>, 90 Cal. App. 4th 1427, 1432 (2001) (citing Cal. Civ. Proc. Code § 1030(b)).

"If the plaintiff fails to file an undertaking after the court determines the grounds for the motion have been established, the plaintiff's 'action or special proceeding shall be dismissed as to the defendant in whose favor the order requiring the undertaking was made.'"  <u>Alshafie</u>, 171 Cal. App. at 428 (citing Cal. Civ. Proc. Code § 1030(c)-(d)).

### III.   ANALYSIS

The first requirement under Cal. Civ. Proc. Code § 1030 is that the plaintiff resides out-of-state or is a foreign corporation.  Cal. Civ. Proc. Code § 1030(a); <u>Gabriel Techs.</u>, 2010 WL 3718848, at *3.  Here, Plaintiff alleges that it is a Hawaii limited liability company with its principal place of business in Hawaii.  First Am. Compl. ¶ 1.  Plaintiff's formation and residency outside of California satisfies the first requirement of Cal. Civ. Proc. Code § 1030.

Next, the Court considers whether Defendant has demonstrated a reasonable possibility of success on the merits.  See <u>Gabriel Techs.</u>, 2010 WL 3718848, at *5 (citing Cal. Civ. Proc. Code. § 1030(b)).  To satisfy the requirements of Cal. Civ. Proc. Code. § 1030, Defendant must produce sufficient evidence to demonstrate it has a "reasonable possibility" of defeating each of Plaintiff's claims.  <u>Id.</u>

Here, Defendant maintains that it has sufficiently shown that it is "reasonably possible" that Defendant will succeed on Plaintiff's trade libel, intentional and negligent interference with prospective economic advantage, and unfair competition claims. The Court considers Plaintiff's claims below.

**A.  Trade Libel**

To state a claim for trade libel, a plaintiff must allege facts demonstrating a "(1) publication, (2) which induces others not to deal with plaintiff, and (3) special damages." Aetna Cas. and Sur. Co., Inc. v. Centennial Ins. Co., 838 F.2d 346, 351 (9th Cir. 1988).

The statute of limitations in a libel action begins to run when the statement is published. Shively v. Bozanich, 31 Cal. 4th 1230, 1247 (2003). Publication occurs when the defendant communicates the defamatory statement to a third person. Id. In some cases, the accrual of a cause of action is delayed until the plaintiff discovers, or should have discovered, the factual basis for the claim. Burdette v. Carrier Corp., 158 Cal. App. 4th 1668, 1692 (citing Shively, 31 Cal. 4th at 1248). The discovery rule has been applied in cases of libel where the defamatory statement is hidden from view and the plaintiff has no access to or cause to seek access to the statement, such as where a statement is hidden in a personnel file that cannot be inspected by the plaintiff. Id. (citing Shively, 31 Cal. 4th at 1249).

1    Thus, the statute of limitations begins to run when a plaintiff suspects or should suspect that her injury was caused by wrongdoing. Id. (citing Bernson v. Browning-Ferris Indus., 7 Cal. 4th 926, 932, (1994)). "It is not necessary that the plaintiff know the exact manner in which the injuries were effected." Id.

   California law is unclear on what statute of limitations applies in trade libel cases. See Guess, Inc. v. Superior Court, 176 Cal. App. 3d 473, 477-78 (1986). The question is whether the applicable statute of limitations is the one-year provision contained in Cal. Civ. Proc. Code § 340(3), which governs defamation actions, or the two-year limitation of Cal. Civ. Proc. Code § 339(1), which governs liability not founded on an instrument in writing. Id. at 478.

   Even assuming that the two year statute of limitations applies to Plaintiff's claim for trade libel, the Court finds that Defendant has provided sufficient evidence to show a "reasonable possibility" that it will succeed on this claim.

   Here, Defendant argues that Plaintiff had knowledge of the purported defamatory statements since 2010, more than two years before Plaintiff filed this Action. Plaintiff submits, on the other hand, that it did not know of the statements until January 2013 and that it could not reasonably have learned of these statements before September 2012. Therefore, Plaintiff argues, the delayed discovery rule should apply to allow the

accrual of the statute of limitations to begin on September 2012.  See Opp'n 10:10-18.

The Court finds that Defendant provides sufficient evidence to show that Plaintiff may have had a factual basis to suspect that Defendant was making these purported defamatory statements since 2010.  See Burdette, 158 Cal. App. 4th at 1692.  Namely, Defendant provides exhibits indicating that Plaintiff had some knowledge of the purported defamatory language beginning as early as 2010, three years before Plaintiff filed the instant suit.  Dkt. # 39, Exs. 11, 14, 15.  Based on this evidence, the Court finds that Defendant has shown that it is "reasonably possible" that it will succeed on Plaintiff's trade libel claim as it may be barred by the requisite statute of limitations.

**B.   Intentional and Negligent Interference with Prospective Economic Advantage**

The general rule is that the statute of limitations for Plaintiff's claims for intentional and negligent interference with prospective economic advantage is two years.  Cal. Civ. Proc. Code § 339(1); Knoell v. Petrovich, 76 Cal. App. 4th 164, 168 (1999).  The statute of limitations starts to run when the alleged defamatory statements were published.  Knoell, 76 Cal. App. 4th at 168.  As discussed above, Defendant provides evidence to suggest that Plaintiff may have known about Defendant's alleged defamatory statements

since at least 2010. Because Defendant has provided evidence to support that it may be able to raise the statute of limitations defense as a bar to Plaintiff's claims for interference with prospective economic advantage, the Court finds that Defendant has met its burden in showing that it is "reasonably possible" that it will succeed on Plaintiff's claims.

**C.   Unfair Business Practices in Violation of Cal. Bus. & Prof. Code § 17200 et seq.**

Cal. Bus. & Prof. Code § 17200 prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]" and "unfair, deceptive, untrue or misleading advertising." Rolling v. E*Trade Sec., LLC, 756 F. Supp. 2d 1179, 1192 (N.D. Cal. 2010) (citing Cal. Bus. & Prof. Code § 17200).

Plaintiff does not allege that Defendant violated any particular law; thus, it appears that Plaintiff's allegations are based on the "fraudulent" or "unfair" prongs of the UCL. To state a claim for fraud under the UCL, a plaintiff must show that "reasonable members of the public are likely to be deceived" by the alleged unfair business practice. Martinez v. Welk Group, Inc., 907 F. Supp. 2d 1123, 1140 (S.D. Cal. 2012) (citing Rubio v. Capital One Bank, 613 F.3d 1195, 1204 (9th Cir. 2010)). Unfair business practices are not defined under the UCL, however, "unfair" business practices can be defined as immoral, unethical, oppressive, or unscrupulous conduct, or practices that

are "tethered to a specific constitutional, statutory, or regulatory provision." Id. at 1141. "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides.'" In re Ferrero Litig., 794 F. Supp. 2d 1107, 1116 (S.D. Cal. 2011) (citing Linear Tech. Corp. v. Applied Materials, 152 Cal. App. 4th 115, 134-35 (2007)). Given the low bar to imposing a cost bond and the public policy disfavoring out of state plaintiffs taking advantage of the California forum, the Court finds that a reasonable possibility exists here. This is the case because Defendant presents substantial evidence to suggest that the statements it made may have been true or not fraudulent.

**D. Reasonableness of Bond Amount Requested**

Because the Court finds Defendant has demonstrated that Plaintiff is an out-of-state plaintiff and that it has a reasonable possibility of defeating Plaintiff's claims, the Court next considers whether the bond amount proposed by Defendant is reasonable.

Defendant requests that the Court require Plaintiff to post bond costs in the amount of at least $137,000. Defendant seeks to recover costs against Plaintiff under Fed. R. Civ. P. 54(d)(1). Defendant asserts that C.D. Cal. R. 54.3-4 and 54.3-5 allow recovery for costs incurred in connection with taking oral depositions and for reporter's transcripts of trial proceedings.

Defendant anticipates that it will take at least ten depositions and that Plaintiff will also notice several depositions. Thus, Plaintiff submits that it will incur deposition costs of $24,000. Defendant also anticipates that the cost of a trial transcript for a five-day trial in this Action will be $8,000. Thus, Defendant submits that it will incur costs of at least $32,000. Mot. 14:7-19.

Defendant also states that it expects it will have to prove matters denied by Plaintiff in response to Defendant's requests for admission. Defendant avers that Fed. R. Civ. P. 37(c)(2) provides for mandatory payment of reasonable expenses, including attorneys' fees, incurred in proving denied or unanswered requests for admission. Id. at 14:20-24. Defendant projects that it will incur $105,000 in mandatory attorneys' fees. Mot. 15:6-12.

Thus, Defendant requests that the Court order Plaintiff to post a bond of $137,000.

Plaintiff, on the other hand, submits that Defendant's cost calculations are inflated. Plaintiff asserts that it is unlikely that more than three depositions would be taken in this action. Plaintiff further asserts that Defendant improperly attempts to get around the bar on recovering attorneys' fees by attempting to manipulate Fed. R. Civ. P. 37(c)(2).

As noted above, courts deciding whether to order a bond should consider "the reasonable extent of the

security to be posted" from both the plaintiff's and defendant's perspective.  <u>Simulnet</u>, 37 F.3d at 576.

As to the request for deposition costs pursuant to Fed. R. Civ. P. 54(d)(1) and C.D. Cal. R. 54.3-5 in the amount of $24,000, the Court finds that this amount is reasonable.  Defendant provides a declaration from its counsel indicating that it anticipates that at least twenty depositions will be noticed in this matter.  Wilkinson Decl. ¶ 6.  The deposition and transcript fees, Defendant submits, is estimated to be $24,000.  <u>Id.</u> at ¶ 7.  The Court finds that $24,000 is a reasonable amount of bond costs, given (1) Defendant's counsel's declaration to the Court that it intends to notice depositions for each recipient of an allegedly libelous statement (Wilkinson Decl. ¶ 3) and (2) Plaintiff's statement that Plaintiff intends to take several depositions of Defendant and its sales and marketing personnel, customers, and potential customers (<u>Id.</u> at ¶¶ 5-6 (citing Dkt. # 48-1)).

However, while Defendant requests trial transcripts and daily costs of at least $8,000, the Court finds this amount unreasonable.  Under C.D. Cal. R. 54-3.4, trial transcripts are only recoverable costs "if requested by the Court or prepared pursuant to stipulation," which is not the case here.  Thus, the Court finds this amount unreasonable.

Further, the Court finds that Defendant's requested attorneys' fees in the amount of $105,000 is

15

unreasonable, because it is unclear to the Court whether Defendant would be entitled to such fees under Fed. R. Civ. P. 37.  Fed. R. Civ. P. 37(c)(2) provides:

> **(2) *Failure to Admit.*** If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>> (A) the request was held objectionable under Rule 36(a);
>> (B) the admission sought was of no substantial importance;
>> (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
>> (D) there was other good reason for the failure to admit.

   Here, Defendant does not account for the exceptions in Fed. R. Civ. P. 37, indicating when expenses, including attorneys' fees, for a failure to admit would be appropriate.  At present, it is unclear whether Defendant needs these admittances or whether it would be appropriate for Plaintiff to withhold information under the given exceptions of Fed. R. Civ. P. 37.  As Plaintiff points out, Defendant has failed to show that

1  each of the requests for admission is objectionable, of
2  substantial importance, and that Plaintiff has no
3  reasonable ground to refuse to admit them.  As
4  Defendant lacks specificity in asserting its
5  estimation, the Court finds that Defendant's amount of
6  undertaking for attorneys' fees is unreasonable.
7       Thus, the Court finds that an amount of only
8  $24,000 in bond costs is reasonable.
9       In sum, the Court finds that Defendant has met its
10 burden in showing that it is "reasonably possible" that
11 it will succeed on Plaintiff's claims.  Upon a further
12 review of the filings of the Parties, the Court notes
13 that this Action is particularly suited for summary
14 judgment and that the Parties should consider filing
15 dispositive motions on the various claims raised by
16 Plaintiff.
17      The Court also recognizes that the Parties in the
18 related case, <u>Aqua Connect Inc. v. Code Rebel LLC</u> (11-
19 cv-05764-RSWL-MAN), have stipulated to submit the
20 dispute in that related case to binding arbitration
21 [233].  The Court makes note that the Parties should
22 consider also submitting the claims raised by Plaintiff
23 to binding arbitration so as to be considered with the
24 claims raised by Aqua Connect in the related action.
25 Such may be a more efficient way of resolving all of
26 the issues in dispute between the Parties.
27 //
28 //

### IV. CONCLUSION

In sum, the Court **GRANTS** Defendant's Motion for Cost Bond, and **ORDERS** that Plaintiff post bond in the amount of $24,000 within thirty days of entry of this Order. Plaintiff shall refer to the Local Rules of the Central District of California to ensure proper compliance with this Order.

**IT IS SO ORDERED.**

DATED: June 24, 2014         *RONALD S.W. LEW*
                             **HONORABLE RONALD S.W. LEW**
                             Senior, U.S. District Court Judge